**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (Az Bar No. 037343)
ashamis@shamisgentile.com
14 NE 1ˢᵗ Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
Fax: (786) 623-0915

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| LAURA RHODES, on behalf of herself and all others similarly situated, | CASE NO.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PROGRESSIVE ADVANCED INSURANCE COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Laura Rhodes ("Plaintiff") brings this class action on behalf of herself and all others similarly situated, by and through undersigned counsel, and for her Complaint against Progressive Advanced Insurance Company ("Defendant" or "Progressive") states and alleges as follows:

## INTRODUCTION

1.      This is a class action on behalf of Plaintiff and all other similarly situated claimants in Arizona who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value ("ACV") of the loss vehicles. Through Mitchell's valuation, Defendant systemically thumbs the scale when calculating the ACV of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major

competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California.

2.      In the event of a "total loss" to an insured vehicle—*i.e.*, where repair of the vehicle is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the ACV the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under its insurance policy terms and applicable Arizona law, Defendant has a duty to pay, and represent that they will pay, the ACV of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by making improper and unreasonable adjustments to reduce the value of comparable vehicles, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4.      Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 10.

5.      Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant breached its contracts and the covenant of good faith and fair dealing and was unjustly enriched.

6.      As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did

not receive the benefit of her bargain, and thus sustained actual damages.

7.      By this action, Plaintiff, individually and on behalf of the Class, seek damages and injunctive and declaratory relief.

## PARTIES

8.      Plaintiff Laura Rhodes, at all relevant times, was an Arizona citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about September 2, 2021, Plaintiff was in a car wreck and Defendant deemed her vehicle to be a total loss.

9.      Defendant Progressive Advanced Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## JURISDICTION AND VENUE

10.      Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Arizona. Defendant is an Ohio Corporation that has its corporate headquarters in Mayfield Village, OH, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Arizona.

11.      Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustments that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.

12.      Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claim occurred in this District, and Defendant transacts business in this District.

## FACTUAL ALLEGATIONS

13.      On September 2, 2021, Plaintiff was involved in a car wreck and sustained physical damage to her vehicle.

14.      Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

15.      Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle

to be a total loss and purported to offer her the ACV of her loss vehicle, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Arizona law.

16.     When calculating its valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive Group entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on September 21, 2021. *See* Exhibit B.

17.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 10.

18.     In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$891.00, -$1,054.00, -$730.00, and - $679.00 respectively, were applied to four of the five comparable vehicles. Exhibit B at pp. 6-8.

19.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 10.

20.     Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive ACV. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 10.

21.     In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

22.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Progressive. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

23.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments is further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports

to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

24.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in Arizona while not subjecting California claimants to the same negative adjustments.

25.     Plaintiff and each member of the class were damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendant applied proper methodologies and appraisal standards.

26.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for ACV.  Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $670.80 higher,[1] before adding the related increase in payments for applicable sales taxes.

## CLASS ALLEGATIONS

27.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Class:

> All Arizona citizens insured by Defendant who, from the earliest allowable time through the date an Order granting class certification is entered, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV.

28.     Excluded from the proposed Class are: (a) Defendant and its agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiff and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

29.     Plaintiff reserves her right to amend the Class definition if discovery and further

---

[1] $670.80 is the average of the Projected Sold Adjustments applied to four of the five comparable vehicles in Plaintiff's valuation report.

investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

30.     **Numerosity (Rule 23(a)(1)).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice..

31.     **Commonality (Rule 23(a)(2)).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a. Whether Whether Defendant systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine ACV;

b. Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the ACV of Plaintiff's and Class members' total loss vehicles;

c. Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's ACV was deceptive;

d. Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e. Whether Defendant's acts violated its obligations under the policy of insurance;

f. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g. Whether Plaintiff and members of the Class are entitled to an injunction restraining Progressive's future deceptive acts and practices.

32.     **Typicality (Rule 23(a)(3)).** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members

of the proposed Class, including the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

33.     **Adequacy (Rule 23(a)(4)).** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

34.     **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate action is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by class members who claims are too small and complex to individually litigate against a large corporate defendant.

35.     **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

36.     **Particular Issues (Rule 23(c)(4)).** Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Classs and are capabale of class-wide resolution that will significantly advance the litigation.

### FIRST CAUSE OF ACTION
**BREACH OF CONTRACT**

37.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

38.     This Count is brought by the Plaintiff on behalf of the Class.

39.     Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

40.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

41.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

42.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

43.     Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

44.     Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

45.     As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## SECOND CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

46.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

47.     This Count is brought by the Plaintiff on behalf of the Class.

48.     Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

49.     Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

50.     Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle. Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

51.     Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The

cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

52.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

     a.  Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

     b.  Failing to pay insureds the ACV of their total-loss vehicles;

     c.  Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

     d.  Inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

53.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT

54.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

55.     This Count is brought by the Plaintiff on behalf of the Class.

56.     Plaintiff pleads this claim separately as well as in the alternative to her other claims,

as without such claims she would have no adequate legal remedy.

57.     Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

58.     Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

59.     Defendant also failed to comply with Arizona law, which requires insurers who settle a total loss claim with a cash settlement on the basis of actual cash value to determine the "actual cost… to purchase a comparable automobile" of a totaled vehicle, determined by "i. The cost of a comparable automobile in the local market area when a comparable automobile is available in the local market area" or "ii. One of two or more quotations obtained by the insurer from two or more qualified dealers located within the local market area when a comparable automobile is not available in the local market area." Ariz. Admin. Code Section R20-6-801(H)(1)(b). When the basis for the total loss settlement deviates from either of these methods, "the deviation must be supported by documentation giving particulars of the automobile condition. Any deductions from such cost, including deduction for salvage, must be measurable, discernible, itemized and specified as to dollar amount and shall be appropriate in amount. The basis for such settlement shall be fully explained to the first party claimant." Ariz. Admin. Code Section R20-6-801(H)(1)(c).

60.     If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Arizona law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

61.     Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

62.     Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in

the amount Defendant was unjustly enriched, in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**

63.    Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

64.    This Count is brought by the Plaintiff on behalf of the Class.

65.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

66.    Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable vehicles that have been reduced by arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

67.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

68.    As a result of these breaches of contract, Plaintiff and the Class members have been injured.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A.  An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

C.  Disgorgement of Defendant's profits;

D.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

E.  An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F.  An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: May 5, 2022                              Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
<u>*/s/ Andrew J. Shamis*</u>
Andrew J. Shamis, Esq.
Arizona Bar No. 037343
ashamis@shamisgentile.com
14 NE 1ˢᵗ Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

*Attorneys for Plaintiff and the Putative Class*